

**United States Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

FILED

SEP 22 2022

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

May 11, 2022

Abraham Saad
Glazer Saad Anderson, L.C.
P.O. Box 1683
Huntington, West Virginia 25717

> Re:  United States v. Laura Danielle Jackson
>      Criminal No. 3:22-cr-00016

Dear Mr. Saad:

This will confirm our conversations with regard to your client, Laura Danielle Jackson (hereinafter "Ms. Jackson"). As a result of these conversations, it is agreed by and between the United States and Ms. Jackson as follows:

1.  **PENDING CHARGES**. Ms. Jackson is charged in a fourteen-count indictment as follows:

> a. Count One charges Ms. Jackson with a violation of 18 U.S.C. § 1029(a)(2) (Unauthorized Use of an Access Device);
>
> b. Counts Two and Three charge Ms. Jackson with violations of 18 U.S.C. § 1341 (Mail Fraud);
>
> c. Count Four charges Ms. Jackson with a violation of 18 U.S.C. § 1028A (Aggravated Identity Theft);
>
> d. Count Five charges Ms. Jackson with a violation of 18 U.S.C. § 1341 (Mail Fraud);

_____
Defendant's
Initials

e. Count Six charges Ms. Jackson with a violation of 18 U.S.C. § 1028A (Aggravated Identity Theft); and

f. Counts Seven through Fourteen charge Ms. Jackson with violations of 18 U.S.C. § 1344(2) (Bank Fraud).

2.    **RESOLUTION OF CHARGES**. Ms. Jackson will plead guilty to Counts Two and Three, which charge her with violations of 18 U.S.C. § 1341, and Count Four which charges her with a violation of 18 U.S.C. § 1028A. Following the final disposition, the United States will move the Court to dismiss Counts One, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen and Fourteen in Criminal No. 3:22-cr-00016 as to Ms. Jackson.

3.    **MAXIMUM POTENTIAL PENALTY**. The maximum penalty to which Ms. Jackson will be exposed by virtue of this guilty plea is as follows:

COUNT TWO - 18 U.S.C. 1341 (Mail Fraud)

(a)    Imprisonment for a period of 20 years;

(b)    A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)    A term of supervised release of 3 years;

(d)    A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)    An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

Defendant's
Initials

## COUNT THREE - 18 U.S.C. 1341 (Mail Fraud)

(a)   Imprisonment for a period of 20 years;

(b)   A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)   A term of supervised release of 3 years;

(d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)   An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

## COUNT FOUR - 18 U.S.C. 1028A (Aggravated Identify Theft):

(a)   Imprisonment for a period of two years, which must run consecutive to any other term of imprisonment imposed;

(b)   A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)   A term of supervised release of not more than one year;

(d)   A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(f)   An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

_____
Defendant's
Initials

TOTAL COMBINED MAXIMUM PENALTY:

(a)    Imprisonment for a period of up to 40 years on Counts 2 and 3 followed by a consecutive sentence of two years on Count 4;

(b)    A fine of $750,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

(c)    A term of supervised release of not more than six years;

(d)    A mandatory special assessment of $300 pursuant to 18 U.S.C. § 3013; and

(e)    An order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664, or as otherwise set forth in this plea agreement.

4.    **SPECIAL ASSESSMENT**. Ms. Jackson has submitted certified financial statements to the United States reflecting that she is without sufficient funds to pay the special assessment due upon conviction in this case. Ms. Jackson agrees that, if incarcerated, she will join the Inmate Financial Responsibility Program, earnings from which will be applied toward payment of the special assessment.

5.    **RESTITUTION**. Ms. Jackson understands that, pursuant to 18 U.S.C. § 2259, the Court shall order restitution to the victims in this case for the full amount of the victims' losses, if any, of at least $40,000, notwithstanding the offense of conviction. Ms. Jackson further agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Ms. Jackson further agrees as follows:

(a)    Ms. Jackson agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and

_____
Defendant's
Initials

testimony concerning assets upon request of the United States.

(b) Ms. Jackson will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

(c) Ms. Jackson agrees not to dispose of, transfer or otherwise encumber any real or personal property which she currently owns or in which she holds an interest.

(d) Ms. Jackson agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest she may have in and to such property, and waives her right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e) Ms. Jackson agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds $40,000. However, nothing in this provision is intended to preclude the Court from ordering Ms. Jackson to pay a greater or lesser sum of restitution in accordance with law.

6. **PAYMENT OF MONETARY PENALTIES**. Ms. Jackson authorizes the Financial Litigation Program in the United States Attorney's Office to obtain a credit report from any major credit reporting agency prior to sentencing in order to assess her financial condition for sentencing purposes. Ms. Jackson agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution

_____
Defendant's
Initials

that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Ms. Jackson further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

Ms. Jackson authorizes the United States, through the Financial Litigation Program, to submit any unpaid criminal monetary penalty to the United States Treasury for offset in accordance with the Treasury Offset Program, regardless of his payment status or history at that time.

In addition to any payment ordered by the Court, Ms. Jackson shall pay all monies received from any source other than earned income, including but not limited to, lottery winnings, gambling proceeds, judgments, inheritances, and tax refunds, toward the Court-ordered restitution or fine.

Ms. Jackson agrees that if she retains counsel or has appointed counsel in response to the United States' efforts to collect any monetary penalty, she shall immediately notify the United States Attorney's Office, Attention: Financial Litigation Program ("FLP"), P.O. Box 1713, Charleston, West Virginia 25326-1713, in writing and shall instruct her attorney to notify FLP immediately of her representation.

7.    **COOPERATION.**    Ms. Jackson will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Ms. Jackson may have counsel present except when appearing before a grand jury.

_____
Defendant's
Initials

8.    **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Ms. Jackson, and except as expressly provided for in Paragraph 10 below, nothing contained in any statement or testimony provided by her pursuant to this agreement, or any evidence developed therefrom, will be used against her, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9.    **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Ms. Jackson for any violations of federal or state laws.   The United States reserves the right to prosecute Ms. Jackson for perjury or false statement if such a situation should occur pursuant to this agreement.

10.   **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Ms. Jackson stipulate and agree that the facts comprising the offenses of conviction and relevant conduct, however the Stipulation of Facts does not include all relevant conduct. A copy of the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit A."

Ms. Jackson agrees that if she withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by her, and she is subsequently tried for her conduct alleged in the indictment and other relevant conduct, as more specifically described in the Stipulation of Facts, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Ms. Jackson or of any of her witnesses, or in rebuttal of any testimony introduced by her or on her behalf. Ms. Jackson knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right she

_____
Defendant's
Initials

has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Ms. Jackson understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Ms. Jackson knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. Ms. Jackson also knowingly and voluntarily waives any right to seek appellate review of any claim or argument that (1) the statutes of conviction (18 U.S.C. §§ 1344(2) and 1028A) are unconstitutional, and (2) Ms. Jackson' conduct set forth in the Stipulation of Facts (Plea Agreement Exhibit A) does not fall within the scope of 18 U.S.C. §§ 1344(2) and 1028A.

The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Defendant's
Initials

Ms. Jackson also knowingly and voluntarily waives the right to challenge his guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

12.     **WAIVER OF FOIA AND PRIVACY RIGHT.** Ms. Jackson knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

13.     **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a)     Inform the Probation Office and the Court of all relevant facts and conduct;

(b)     Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c)     Respond to questions raised by the Court;

(d)     Correct inaccuracies or inadequacies in the presentence report;

(e)     Respond to statements made to the Court by or on behalf

_____
Defendant's
Initials

of Ms. Jackson;

(f)  Advise the Court concerning the nature and extent of Ms. Jackson' cooperation; and

(g)  Address the Court regarding the issue of Ms. Jackson' acceptance of responsibility.

14.  **VOIDING OF AGREEMENT.**  If either the United States or Ms. Jackson violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

15.  **ENTIRETY OF AGREEMENT.**  This written agreement constitutes the entire agreement between the United States and Ms. Jackson in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Ms. Jackson in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

WILLIAM S. THOMPSON
United States Attorney

By:

M. RYAN BLACKWELL
Assistant United States Attorney

MRB/tlm

Defendant's
Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eleven-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____                _____
Laura Danielle Jackson                          Date Signed
Defendant

_____                _____
Abraham Saad                                    Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 3:22-cr-00016

LAURA DANIELLE JACKSON

### STIPULATION OF FACTS

The United States and LAURA DANIELLE JACKSON (hereinafter "defendant," "my" and "I") stipulate and agree that the facts comprising the offenses of conviction (Mail Fraud and Aggravated Identity Theft) in the indictment in the Southern District of West Virginia, Criminal No. 3:22-cr-00016, and some, but not all, relevant conduct include the following:[1]

### BACKGROUND

1. On or about August 1, 2018, I started working at a privately held human resources company ("Temp Agency") in South Charleston, West Virginia. Temp Agency was a business that connected businesses to workers for temporary or contract work. On September 17, 2018, I assisted a man ("B.L.") with his application for employment at Temp Agency. The employment application included numerous areas where B.L provided his name, social security number, and date of birth.

### OFFENSE CONDUNCT – COUNT TWO
### (Mail Fraud)

2. On or about September 18, 2018, I used B.L.'s name, social security number, and date of birth to apply for a credit card online. I directed that the credit card be mailed to my home address in Hurricane, West Virginia. I received the credit card at my house on or about September 22, 2018. After I received the credit card I activated and used the credit card to buy $2,261.70 worth of goods and merchandise.

---

[1] This Stipulation of Facts does not contain every fact known to defendant and to the United States concerning is involvement in the charges set forth in the indictment and is relevant conduct.

### "PLEA AGREEMENT EXHIBIT A"

## OFFENSE CONDUNCT — COUNT THREE
### (Mail Fraud)

3. On or about September 25, 2018, I used B.L.'s name, social security number, and date of birth to apply for a second credit card online. I, again, directed that the credit card be mailed to my home address in Hurricane, West Virginia. I received the credit card at my house on or about September 27, 2018. After I received the credit card, I activated and used the credit card to buy $8,365.00 worth of goods and merchandise.

## OFFENSE CONDUNCT — COUNT FOUR
### (Aggravated Identity Theft)

4. On or about September 22, 2018, I used B.L.'s name, social security number, and date of birth to apply for and receive a credit card through the mail. I did not have the permission or authority of B.L. to use his name, social security number, or date of birth to apply for a credit card nor did I have his permission or authority to use the credit card to purchase goods and merchandise.

5. I agree with the United States that South Charleston, Kanawha County, West Virginia, and Hurricane, Putnam County, West Virginia, are both within the Southern District of West Virginia.

## RELEVANT CONDUCT

### Coal Company

6. On or about January 8, 2018, I began working at a privately held coal company ("Coal Company") located in Milton, West Virginia. Soon after I started working there, I received access to a Coal Company credit card to make business-related purchases. I knew that I did not have permission or authority to use the Coal Company credit card to make personal purchases.

7. Despite knowing it was inappropriate to do so and not authorized, I used the Coal Company credit card to make $4,451.88 in personal purchases. I completed many of these unauthorized purchases online and directed that the purchased items be mailed to my personal address in Hurricane, West Virginia. Examples of my unauthorized purchases include, but are not limited to: an Apple iPad, a Nintendo Switch, clothing, and an Apple iWatch. I also

**"PLEA AGREEMENT EXHIBIT A"**

2

used the Coal Company credit card to book a hotel room for me and my family in St. Charles, Missouri, for two nights beginning on April 6, 2018. My family and I then traveled to Missouri to visit friends. Despite being in Missouri on vacation, I told Coal Company that I was unable to attend work due to a medical emergency. I provided Coal Company with a forged medical record to support my lie. Coal Company terminated my employment in June of 2018.

## *Insurance Company*

8. I started a job with a privately held insurance company ("Insurance Company") in St. Albans, West Virginia, on October 16, 2018. My job title at Insurance Company was Human Resource Generalist, and due to my position, I had access to the personal identification information of employees of Insurance Company. I used my employment position to access and obtain the personal identification information of at least five employees of Insurance Company. After I obtained their personal identification information, I attempted to apply for credit cards in their names.

9. On or about December 3, 2018, I used the personal identification information of an Insurance Company employee ("J.L.") to apply for a credit card online. I directed the credit card be mailed to my home address in Hurricane, West Virginia. I received the credit card at my house on or about December 5, 2018. After I received the credit card I activated and used the credit card to buy $2,878.55 worth of goods and merchandise. At no time did I have J.L.'s permission or authority to use his personal identification information.

10. While I was employed with Insurance Company, the company learned of my arrest for fraud with an access device related to my employment with Coal Company. Insurance Company requested me to explain the circumstances surrounding the arrest, and why it was not disclosed on my employment application. On December 28, 2018, I wrote a letter to Insurance Company and told them that I was wrongfully accused by Coal Company - even though I knew that was a lie. I also forged Cabell County, West Virginia, Magistrate Court documents to make it appear that cases against me had been dismissed and provided those forged documents to Insurance Company. I also created a false document entitled, "Re: Final Settlement Agreement for Defamation of Character" that purported to be a settlement wherein Coal Company paid me money based on false allegations made against me. I provided this false document

to Insurance Company to attempt to convince them that I had wrongfully been accused of stealing from Coal Company. Insurance Company terminated my employment on or about February 15, 2019.

<u>*Tax Firm*</u>

11. On or about January 13, 2020, I started a new job with a privately held tax firm ("Tax Firm") in Cross Lanes, West Virginia. Tax Firm hired me as an Accounting Associate, and my job responsibilities included providing various accounting, bookkeeping, payroll, and tax related services for clients of Tax Firm.

12. Tax Firm provided payroll assistance for a private healthcare agency ("Healthcare Company"). I had access to Healthcare Company's payroll records through my employment position at Tax Firm. I used my employment at Tax Firm to create a fake employee named "Tiffany Paullete" and added this fake employee to Healthcare Company's payroll. I used my ex-husband's social security number to complete an Employee's Withholding Certificate (Form W-4) for "Tiffany Paullete." I then entered my personal bank account information into "Tiffany Paullete's" employment profile to cause paychecks for this fake employee to be deposited into my personal bank account. On October 16, 2020, I received a $1,067.00 payroll check direct deposited into my bank account for "Tiffany Paullete," from Healthcare Company. I knew that I should not have received this money. I further knew that I did not have permission from Tax Firm, Healthcare Company, or my ex-husband, to create the fake employee, "Tiffany Paullete," or do any of the acts I did relating to this fraudulent act.

13. I additionally used my position at Tax Firm to defraud a church ("Church"), another client of Tax Firm. Church entrusted Tax Firm to do bookkeeping and pay authorized bills. Church provided Tax Firm with a check book and authorized a designated employee ("S.F.") to sign checks on behalf of Church. Tax Firm maintained a signature stamp with S.F.'s name affixed to the stamp. Beginning in September of 2020, and continuing through December of 2020, I used my employment position to write checks to myself from Church. I did this by illegally taking checks that belonged to Church, writing checks payable to myself, and using the S.F. signature stamp to sign the checks. I did this without the authorization of Church or S.F. I then cashed the checks at branches of a bank ("Victim Bank"), in Kanawha County, West Virginia. In total, I know that I cashed at least $7,050.00 worth

of fraudulent checks. After I wrote the fraudulent checks, I attempted to conceal my actions by manipulating bookkeeping information for Church.

Stipulated and agreed to:

Laura Danielle Thompson (Jackson)
LAURA DANIELLE JACKSON
Defendant

9/13/22
Date

#10134
ABRAHAM SAAD
Counsel for Defendant

09/13/2022
Date

M. RYAN BLACKWELL
Assistant United States Attorney

9/22/22
Date

**"PLEA AGREEMENT EXHIBIT A"**