**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**UNITED STATES OF AMERICA**

**v.**                                                    **CRIMINAL NO. 3:22-cr-00016**

**LAURA DANIELLE JACKSON**

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America, by Holly J. Wilson, Assistant United States Attorney, and submits this Sentencing Memorandum requesting that this Court impose a Guidelines sentence.

BACKGROUND

On January 25, 2022, a federal grand jury returned a fourteen count indictment against defendant Laura Jackson ("Jackson") charging her with one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2) (Count One); three counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts Two, Three, and Five); two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts Four and Six); and seven counts of bank fraud in violation of 18 U.S.C. § 1344(2) (Counts Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen). On September 22, 2022, Jackson pled guilty to Counts Two, Three, and Four pursuant to a written, letter-form plea agreement.

APPLICABLE GUIDELINES RANGE

**A.      Under the newly amended Guidelines, Jackson's applicable Guidelines range for Counts Two and Three is eight to fourteen months.**

For Counts Two and Three, the Presentence Investigation Report ("PSR") calculated Jackson's total offense level at thirteen and her criminal history category at I, resulting in a Guidelines range of twelve to eighteen months. PSR ¶¶ 62, 69, 96. However, the PSR failed to apply a two-point reduction pursuant to U.S.S.G. § 4C1.1, a newly added provision in the recently amended Guidelines.

Under U.S.S.G. § 4C1.1, the sentencing court should apply a two-level decrease if the defendant has zero criminal history points and if the offense did not involve enumerated aggravating factors. The United States submits that Jackson qualifies for the two-level decrease; she has zero criminal history points, and her offense did not involve any of the enumerated aggravating factors.

As a result, Jackson's true total offense level for Counts Two and Three is eleven. With a criminal history category I, her Guidelines range is eight to fourteen months, which is within Zone B of the Sentencing Table.

**B.    Jackson faces a mandatory two-year term of imprisonment for Count Four.**

Jackson's applicable Guidelines sentence for Count Four is that mandated by 18 U.S.C. § 1028A: two-years of mandatory incarceration, to run consecutively with any other sentence. U.S.S.G. § 2B1.6; *see* 18 U.S.C. § 1028A.

<u>AVAILABLE SENTENCES</u>

Because Jackson's applicable Guidelines range for Counts One and Two falls in Zone B of the Sentencing Table, the Guidelines provide that this Court may impose "(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes . . . home detention . . . provided that at least one month is satisfied by imprisonment; or (3) a sentence of probation that includes a condition or combination of conditions that substitute . . . home detention for imprisonment." U.S.S.G. § 5C1.1(c).  The only available sentence for Count Four is two years of imprisonment, to run consecutively to her sentence on Counts Two and Three. 18 U.S.C. § 1028A. Notably, 18 U.S.C. § 1028A(b) provides that "[a] court shall not place on probation any person convicted of [aggravated identity theft]."

SENTENCING RECOMMENDATION

The nature and seriousness of the offense, the need to promote respect for the law and provide adequate deterrence, and Jackson's personal characteristics all support a within-Guidelines sentence. Additionally, Jackson should be ordered to pay restitution to the victims in this case consistent with the PSR.

Between 2018 and 2020, Jackson committed a spree of fraud, lies, and deceit—using various jobs to steal from people and businesses throughout the Kanawha Valley. PSR ¶¶ 20-37.

Her bender began in January 2018 while she worked at a privately held coal company. *Id.* ¶ 16. Jackson used a corporate credit card to make $4,451.88 worth of unauthorized personal purchases. *Id.* ¶ 30. She paid for a family vacation to Missouri with the corporate card, went on the vacation, and lied to the company about her whereabouts. Plea Agmt. Exhibit A, at 3. She told the coal company she had a medical emergency and handed over forged medical records to lock down her story. *Id.*

After she was terminated from the coal company in June 2018, she began working for a temp agency where her conduct escalated. PSR ¶ 17. There, Jackson assisted a man, B.L., with an application for employment. After, she lifted B.L.'s personal information and used it to open two credit cards. *Id.* ¶¶ 20-22. She had the cards sent to her house, activated them, and charged nearly $11,000 to the cards in total. *Id.*

By October 2018, Jackson was working for an insurance company as a Human Resource Generalist. *Id.* ¶ 18. She repeated her scheme there. She accessed at least five different employees' personal information and attempted to apply for credit cards in their names. *Id.* ¶¶ 31-32. She was successful once. In December 2018, she used J.L.'s personal information to obtain a credit card, which she used to make $2,878.55 worth of personal purchases. *Id.* ¶ 31. Eventually, the insurance company learned that Jackson had been arrested for defrauding the coal company and had not disclosed that fact. *Id.* ¶ 33. When confronted with this information, Jackson told the insurance company that she

had been wrongfully accused and forged court documents and a settlement agreement as proof. *Id.* ¶ 33. The insurance company terminated Jackson in February 2019. *Id.*

In January 2020, Jackson started working for a tax firm as an accounting associate, where she defrauded a healthcare agency and a church. *Id.* ¶ 19. Jackson created a fake employee at the healthcare agency and had the fake employee's $1,0067.00 paycheck deposited to her own bank account. *Id.* ¶ 35. Jackson also wrote checks from a local church to herself and edited the church's internal accounting books to conceal her crime. *Id.* ¶ 36. In total, she cashed at least $7,050.00 of fraudulent checks from the church. *Id.* ¶ 37.

Given the compulsiveness of Jackson's criminal behavior, a Guidelines sentence is necessary to capture the seriousness of the offense, to protect the public from future criminal conduct, and to promote respect for the law.

Jackson's continued dishonesty with investigators—and the court—only underscores the point. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A). When investigators first approached her about her conduct, Jackson lied. She denied knowing B.L. or helping him with an employment application. *Id.* ¶ 25. At her initial appearance, Jackson lied. *Id.* ¶ 15. She told the court she was pregnant, when really, she had had a hysterectomy in 2019. *Id.* When interviewed by her probation officer, Jackson lied. *Id.* She told the probation officer that she had a nine-month-old son and provided forged medical records; but again, Jackson had a hysterectomy in 2019. *Id.* ¶¶ 15, 85. At each step, Jackson lied to suit her needs.

Additionally, Jackson's personal characteristics do not suggest any reason why a Guidelines sentence of imprisonment is not appropriate. *See* 18 U.S.C. § 3553(a)(1). Jackson is a 33-year-old woman in "excellent" physical health. *Id.* ¶ 87. Although she has two mental health diagnoses, she treats her conditions with prescription medication. *Id.* ¶ 89. She experienced trauma during her childhood, *id.* ¶ 83, and she has been married twice, *id.* ¶ 84. She has three children from her second

marriage. *Id.* She also has a high school education and has forty-seven college credits in business administration. *Id.* ¶ 91. Post-incarceration, Jackson will likely not be employable in the business administration field. Thus, she will need to be re-trained for a different profession. In sum, Jackson is a healthy, young mother with a basic education who would benefit from the mental health services and vocational opportunities available in prison. *See* 18 U.S.C. § 3553(a)(2)(D).

Finally, general deterrence is also an important factor for sentencing. *See* 18 U.S.C. § 3553(a)(2)(B). Employees who are trusted with private, personal identifying information should be respectful and cautious with that information. A Guidelines sentence will message to the public that exploitation of private information for personal gain will not be tolerated.

CONCLUSION

For the foregoing reasons, a within-Guidelines sentence is sufficient but not greater than necessary to meet the aims of sentencing. Restitution should also be ordered consistent with the PSR.

The United States does not intend to call any witnesses during the sentencing hearing.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

By:

/s/Holly J. Wilson
HOLLY J. WILSON
Assistant United States Attorney
WV State Bar No. 13060
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: holly.wilson@usdoj.gov